UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DARRICK JAMAR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. CV-10-S-3529-NE** |
| ) | |
| **JACOBS TECHNOLOGY, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Darrick Jamar, an African-American male, asserts claims against his former employer, Jacobs Technology, Inc., for racially disparate treatment and race-based termination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*[1] The scope of plaintiff's potential relief was substantially narrowed by an opinion and order entered on June 14, 2012, by the provisions of which this court granted defendant's motion for partial summary judgment, and dismissed all of plaintiff's claims for backpay that accrued after August 31, 2010.[2] A jury trial on plaintiff's remaining claims for relief is set for October 22, 2012.[3] The case currently is before the court on both parties' motions *in limine*.[4]

---

[1] *See* doc. no. 1 (Complaint).

[2] Doc. no. 40, at 11.

[3] Doc. no. 44 (Pretrial Order), at 10.

[4] Doc. no. 45 (defendant's motion *in limine*); doc. no. 47 (plaintiff's motion *in limine*).

# I. DEFENDANT'S MOTION *IN LIMINE*

Defendant seeks the exclusion at trial of the following items of evidence: (1) racial comments made by plaintiff's co-workers; (2) rumors; and (3) testimony from plaintiff's former co-worker Bo Jones.

## A.  Racial Comments by Plaintiff's Co-Workers

Defendant first asks the court to exclude evidence of racially harassing comments allegedly made by plaintiff's co-workers. Specifically, defendant points to the following portion of plaintiff's proposed statement of facts from the Pretrial Order:

> Shortly after plaintiff began working for Jacobs, his supervisor had a discussion with him about the use of "the 'n'-word" on the site by the other white employees. At that time, Jamar was told that the word was used and that it just happens. Jamar heard his co-workers use that racial term on numerous occasions, sometimes directed at him, sometimes directed at other African-Americans. Jamar was often subjected to racist jokes and called racist nicknames on the job site. Plaintiff was often made the scapegoat when a piece of work had not been done properly, even if he did not work on that item.[5]

Defendant also points to plaintiff's deposition testimony, wherein he stated that in 2005, shortly after he was hired by defendant, his foreman, a white male, asked him if he was offended by the use of the offensive racial slur "nigger," because the

---

[5] Pretrial Order, at 3-4.

foreman knew that many of the other employees often used that word.[6] Plaintiff also testified that he heard his co-workers use the word "nigger" approximately once a month.[7] Sometime between 2006 and 2008, a coworker named Clint Smith told plaintiff that there was a difference between "black people" and "niggers."[8] Sometimes, when plaintiff would drive some of his coworkers to a job site, they would call him "Hope," referring to the African-American chauffeur whose character was played by Morgan Freeman in the movie *Driving Miss Daisy*.[9] When plaintiff rode in a truck between two white coworkers, those coworkers referred to their seating arrangement as a "reverse Oreo."[10] Finally, during the 2008 Presidential election, a coworker showed plaintiff a picture of an Air Force One plane that had been digitally altered to add big wheels and curb scrapers, as though it had been "pimped out."[11] Defendant seeks the exclusion of this evidence — and any other similar evidence of race-based comments or actions from coworkers — as irrelevant and/or unfairly prejudicial.

The Federal Rules of Evidence define as "relevant" any evidence that: "(a) .

---

[6] Doc. no. 32 (defendant's summary judgment evidentiary submission), Exhibit A (Deposition of Darrick Jamar), at 46-52.

[7] *Id.* at 52.

[8] *Id.* at 54.

[9] *Id.* at 57-58.

[10] *Id.* at 146.

[11] *Id.* at 147.

. . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) . . . is of consequence in determining the action." Fed. R. Evid. 401. A court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

This court agrees with defendant that evidence of racial remarks by plaintiff's co-workers is not relevant to any issue in this case.[12] None of the individuals alleged to have made these comments were involved in the reduction-in-force decisions that led to plaintiff's loss of employment. "Stray remarks" made by co-workers who were not involved in the employment decision challenged by the plaintiff generally are not considered as evidence of discrimination. *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1329-30 (11th Cir. 1998).

Plaintiff does not challenge that point in his response brief.[13] Instead, he asserts that the co-workers' remarks are relevant to his request for punitive damages, which will require him to prove at trial that defendant exhibited "malice or reckless indifference to [his] federally protected rights." 42 U.S.C. § 1981a(b)(1) (alteration

---

[12] It is important to note that plaintiff did not assert a claim for a race-based hostile work environment in this case.

[13] *See* doc. no. 53 (plaintiff's response to defendant's motion *in limine*), at 1-2.

supplied). According to plaintiff, evidence of his coworkers' race-based comments will be relevant to counter any attempt by defendant to prove that it acted in good faith to prevent discrimination, because such evidence demonstrates that defendant did not effectively enforce its anti-discrimination policies. Even if the challenged comments might have some relevance to plaintiff's request for punitive damages, this court concludes that any probative value of that evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed. R. Civ. P. 403. As defendant points out,

> [i]f the jury were permitted to hear testimony about these alleged comments from other Millwrights — most of which did not occur close in time to the decision at issue — the jury would be unfairly allowed to focus on whether or not inappropriate comments were used by non-decisionmakers — something that is not at issue in this lawsuit.[14]

The jury also might be misled into believing that race-based harassment is a significant issue in this case when, in fact, plaintiff never asserted a harassment claim.

In summary, plaintiff will not be permitted to present evidence of race-based comments made by co-workers who were not involved in making any employment decisions that affected him.

**B.    Rumors**

Next, defendant seeks the exclusion from trial of any evidence of rumors

---

[14] Doc. no. 46 (defendant's brief in support of motion *in limine*).

plaintiff allegedly heard about defendant's race discrimination generally or, more specifically, the termination of his employment. Defendant points to the following portion of plaintiff's proposed statement of facts from the Pretrial Order:

> When Jesse Ortner became the site manager, plaintiff was informed by a coworker that Ortner was trying to terminate plaintiff. During that time, three Jacobs employees, including Jamar, were investigated for improper computer use at work. No wrongdoing was uncovered, but Jamar was told by a supervisor that, if the other two employees had not been involved in the investigation, Jamar would have been terminated then.[15]

Additionally, plaintiff testified during his deposition that a coworker told him he had heard a rumor that Jesse Ortner, the project manager, "was going to lay off all the way up to the black guy."[16] Van Daniels, plaintiff's foreman, and Jimmy Morgan, the general foreman, both told plaintiff they heard the same rumor. However, no one ever told plaintiff that they had personally heard Ortner describe such a plan.[17] Plaintiff also testified that he heard a rumor about Ortner trying to terminate his employment and, based on that rumor, he concluded that Ortner was "targeting" him.[18]

Defendant seeks to exclude any such testimony about rumors as irrelevant and impermissible hearsay. "Hearsay" is defined as "a statement that: (1) the declarant

---

[15] Pretrial Order, at 4.
[16] Jamar Deposition, at 87.
[17] *Id.* at 87-88.
[18] *Id.* at 68-69, 73-74.

does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is not admissible at trial unless an exception applies. Fed. R. Evid. 802. Defendant asserts that the rumors are hearsay, because they are being offered to prove the truth of the matter asserted therein: *i.e.,* that Ortner was attempting to terminate plaintiff's employment. Plaintiff disputes that characterization, and asserts that he, instead, would be offering the rumors to prove the fact that the rumors existed.[19] Even though the evidence of rumors *might* be admissible for that limited purpose, plaintiff still cannot overcome (and, indeed, made little attempt in his brief to overcome) defendant's other arguments, *i.e.,* that the rumors are not relevant; and, even if they were relevant, the danger of unfair prejudice would substantially outweigh the probative value. This court agrees that the "rumor evidence" has little probative value. Plaintiff suggests that the evidence might provide some context for other facts that will be placed into evidence, including plaintiff's motivation for asking Ortner if he was going to be laid off, and how the reduction-in-force by which plaintiff lost his employment generally was organized.[20] Even those facts are of little probative value, however, and there is no reason why they could not be established

---

[19] *See* doc. no. 53, at 3.
[20] *See id.* at 3-4.

through other evidence. Furthermore, and importantly, there is a significant danger that the "rumor evidence" would cause unfair prejudice, confusion of the issues, and/or misleading of the jury. The salient evidence is what actually happened with regard to plaintiff's employment, not what was rumored to be happening.

No evidence about any rumors of Ortner's plans for plaintiff's employment will be admitted at trial.

**C.    Bo Jones**

Finally, defendant seeks to exclude any testimony from Bo Jones, another African-American employee of Jacobs who believes that he was targeted for termination because of his race. Plaintiff first disclosed Jones as a witness in his Amended Initial Disclosures, which were served on defendant on November 1, 2011. There, plaintiff stated:

> Upon information and belief, Bo Jones, [sic] was targeted for termination by Jesse Ortner once he became Site Manager, while employed by Jacobs Technology. According to Mr. Jones, he was targeted because of his race, African-American. That at or near the time Mr. Jones was targeted by Mr. Ortner, a rumor surfaced that he was also after Derek [sic] Jamar.[21]

There is no indication that either party ever deposed Mr. Jones. If his deposition was taken, no copy of the transcript was provided to this court.

---

[21] Doc. no. 46, at Exhibit 2 (Plaintiff's Amended Initial Disclosures).

As an initial matter, and as discussed in the previous section, no evidence based solely on rumor will be permitted.

Defendant also asserts that testimony about Jones also being targeted by Ortner should be excluded because it is impermissible "me too" evidence. As plaintiff points out, however, not all "me too" evidence is inadmissible. Indeed, the Eleventh Circuit has held that evidence of discriminatory acts suffered by other employees can be used, under certain circumstances, to prove an employer's intent to discriminate. *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1286 (11th Cir. 2008).[22] Typically, such "me too" evidence will be allowed if it involves employment decisions made by the same person who made the decisions affecting the plaintiff's employment, and if the person offering the evidence held a position similar to the plaintiff's, and experienced an employment situation similar to the plaintiff's. *Id.* More specifically, another judge in this district has stated that the following factors should be considered in determining whether to admit "me too" evidence:

> whether the allegations of discrimination occurred close in time to [the plaintiff's] allegations, whether the other employees alleging discrimination had similar job positions as [the plaintiff], whether they were demoted or terminated for reasons similar to Defendants' proffered

---

[22] This holding is consistent with Federal Rule of Evidence 404(b), which states that while evidence of other crimes, wrongs, or other acts is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," it is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

reason for demoting [the plaintiff], and whether there was a common decisionmaker.

*Davis v. Dunn Construction Co.,* No. 2:10–CV–2075–RDP, – F. Supp. 2d –, 2012 WL 1952125, *20 (N.D. Ala. May 24, 2012) (Proctor, J.) (alterations supplied). It must also be remembered that the admission of "me too" evidence is "subject to a Rule 403 inquiry which is 'fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Johnson v. Alabama Community College System*, No. 2:09cv636–WHA, 2011 WL 5078776, *5 (M.D. Ala. Oct. 26, 2011).

Here, there is not sufficient information to make the determination whether Jones's testimony should be allowed. Plaintiff's identification of Jones in his initial disclosures only states that Jones was targeted by Jesse Ortner for termination because of his African-American race. While that establishes that plaintiff and Jones are of the same race and that the same decisionmaker was involved in both of their terminations, it does not explain what position Jones held, what his job duties were, or any of the other circumstances surrounding his loss of employment. Absent such information, the court cannot determine whether plaintiff should be allowed to present Jones's testimony.

At the same time, however, it would not be fair to plaintiff to completely

10

exclude Jones's testimony. Instead, the court will allow plaintiff to make a proffer of his testimony before the commencement of the trial. If it appears that Jones will offer testimony about a situation that is sufficiently similar to plaintiff's, then his testimony might be allowed. If Jones does not proffer testimony about a situation that is sufficiently similar to plaintiff's, then his testimony will not be allowed.

## II. PLAINTIFF'S MOTION *IN LIMINE*

Plaintiff seeks to exclude any evidence of his alleged failure to mitigate his damages after August 31, 2010, the date defendant's contract with the National Aeronautic and Space Administration ("NASA") expired, and the final date for plaintiff's ability to recover backpay. Specifically, plaintiff anticipates that defendant may attempt to introduce evidence of plaintiff's failure to fully utilize the services provided by his union, or to otherwise look for another job after his employment with defendant ended.[23]

Plaintiff asserts that such evidence of his failure to mitigate his damages was rendered irrelevant by this court's June 14, 2012 decision to dismiss any claims for backpay after August 31, 2010. Indeed, it seems logical that if plaintiff is not entitled to receive any backpay after August 31, 2010, then evidence of his failure to mitigate damages after that date is of little probative value, and could result in prejudice,

---

[23] *See* doc. no. 48 (plaintiff's brief in support of motion *in limine*), at 2.

11

confusion of the issues, undue delay, or waste of time. *See* Fed. R. Evid. 403.

As defendant points out, however, plaintiff has asserted other claims for damages that make the evidence of his failure to mitigate damages relevant. In his final itemization of damages, plaintiff stated that he is seeking $75,000 in "emotional damages."[24] During his deposition, plaintiff testified that one of the things that had caused him emotional distress was "not being able to find a job."[25] Plaintiff's efforts (or lack thereof) to find new employment clearly would be relevant to counter any argument that he suffered emotional distress from being unemployed. Although evidence of plaintiff's lack of job search efforts might be adverse to his case, there is no indication that admitting the evidence would cause him *undue* prejudice.

Accordingly, defendant will be allowed to present evidence regarding plaintiff's efforts to find another job after his employment with Jacobs ended, but *only* in the context of refuting plaintiff's claims for emotional distress damages.

### III. CONCLUSION AND ORDERS

In accordance with the foregoing, defendant's motion *in limine* is GRANTED in part. It is ORDERED that plaintiff will not be permitted to present evidence of race-based comments made by co-workers who were not involved in making any

---

[24] Doc. no. 49, at 1.
[25] Jamar Deposition, at 134.

employment decisions that affected him, or evidence about rumors of Ortner's plans for plaintiff's employment. With regard to the testimony of Bo Jones, defendant's motion *in limine* is held in abeyance. Plaintiff will be required to make a proffer of Jones's testimony, outside the presence of the jury, before the commencement of trial. Upon hearing the proffer, the court will determine whether Jones's testimony should be allowed.

Plaintiff's motion *in limine* is DENIED. Defendant will be allowed to present evidence regarding plaintiff's efforts to find another job after his employment with Jacobs ended, in the context of refuting plaintiff's claims for emotional distress damages.

DONE this 4th day of October, 2012.

_____
United States District Judge